A97A2089. GREENWALD et al. v. COLUMBUS BANK & TRUST COMPANY.
(492 SE2d 248)

Judge Harold R. Banke.

The trial court granted summary judgment to Columbus Bank & Trust ("Bank") in its action against Richard D. Greenwald and Richard J. Denzik, two of five guarantors of two promissory notes owed by Dougherty, McKinnon & Greenwald, P.C. ("DM&G"). Greenwald and Denzik appeal.

DM&G, a professional accounting firm, executed a promissory note ("demand note") for $300,000 on February 26, 1990. DM&G executed another note for $100,025 ("second note") on November 29, 1990, for a term of 365 days. Both notes were personally guaranteed by Neil A. Dougherty, Len V. McKinnon, Dennis W. Luby, Greenwald, and Denzik.

The guaranty provided in pertinent part, "Payment Guaranteed. For value received, the undersigned hereby unconditionally guarantees payment of the Note on the reverse side. . . . Undersigned agrees . . . that the Holder of said Note from time to time may extend or renew same for any period . . . may surrender, compromise, substitute or exchange all or any part of the collateral described therein, and may grant any releases, compromises or

---

indulgences with respect to said Note, or any extension or renewal thereof or any security therefor or to any party liable thereunder or hereunder. . . ." The guaranty stated that upon default, the Bank could "exercise in such manner and sequence as [Bank] may elect any and all other rights and remedies provided herein or otherwise available . . . under applicable law." The guaranty also afforded the Bank an option of proceeding against any or all of the endorsers, who were "jointly and severally obligated hereunder." Both notes were secured by, among other collateral, accounts receivable, and equipment held by the principal debtor, DM&G.

DM&G shareholder/employees Greenwald, Denzik, and non-shareholder/employee Charles Davis left DM&G on April 19, 1991 and formed a competing accounting firm, Greenwald, Denzik & Davis, P.C. A bitter legal battle concerning their departure ensued. See *Dougherty, McKinnon, & Luby, P.C. v. Greenwald, Denzik, & Davis, P.C.*, 213 Ga. App. 891, 892 (447 SE2d 94) (1994); *Dougherty, McKinnon, & Luby, P.C. v. Greenwald*, 225 Ga. App. 762 (484 SE2d 722) (1997). After they severed their relationship with DM&G, Greenwald and Denzik asked the Bank to remove them as guarantors on the corporate indebtedness of DM&G. By letter of June 29, 1991, with supporting balance sheets, Greenwald and Denzik informed the Bank that DM&G's current collateral securing the indebtedness was "more than adequate to satisfy all outstanding debt owed to the Bank." However, the Bank never consented to their release.

After Greenwald and Denzik left DM&G, the Bank entered into a Loan Agreement on September 29, 1992 with "Dougherty, McKinnon, and Greenwald, P.C. d/b/a Dougherty, McKinnon & Luby" and with the three accountants remaining with the firm, Dougherty, McKinnon, and Luby, individually. It is undisputed that Greenwald and Denzik were not parties to that agreement. As a result of this instrument, the $300,000 demand note was continued, the $100,025 second note was renewed by another note executed that day, and the Bank extended another new $285,000 line of credit. The second note was last renewed in the amount of $100,050 on November 15, 1995.

Internal Bank documents indicate after this new loan agreement the Bank knew that DM&L's credit worthiness was steadily declining. Despite its awareness of DM&L's financial difficulties, the Bank did not call the loans or pursue the pledged collateral. On May 15, 1996, the Bank brought the underlying action, claiming that the demand note and the second note remained unpaid and had gone into default. The Bank sued the professional corporation DM&G, and the five individual guarantors seeking the principal amounts of the two notes, interest, and statutory attorney fees under OCGA § 13-1-11. The trial court determined that the Bank was entitled to sum-

mary judgment as a matter of law and found that the professional corporation (now d/b/a Dougherty, McKinnon, Luby, P.C.) and the five original guarantors including Greenwald and Denzik, were jointly and severally liable to the Bank for $400,796.98 plus interest. In the instant appeal, Greenwald and Denzik challenge that judgment. After obtaining the judgment against Greenwald and Denzik, the Bank moved to foreclose against the collateral of DM&L, exercising its right to its perfected security interest in all accounts receivable, work in process, inventory, equipment, furniture and proceeds of DM&G d/b/a DM&L. *Held*:

We reject Greenwald and Denzik's assertion that summary judgment was erroneously granted and that jury issues remain. It is undisputed that Greenwald and Denzik guaranteed the two notes at issue and that the notes are in default. Neither the execution of the promissory notes nor the guaranty for each note is controverted. After the Bank established its prima facie right to recover on the two notes, the burden then shifted to Greenwald and Denzik to establish any claimed defense in rebuttal. *First Nat. Bank of Dalton v. Damil, Inc.*, 171 Ga. App. 237, 238 (319 SE2d 54) (1984). This they failed to do.

Greenwald and Denzik contend that the trial court failed to consider their defenses. First, they assert that the Bank breached its duty of good faith and fair dealing under OCGA § 11-1-203. They claim that the old accounting firm was "propped up" and kept alive for nearly six years through the Bank's leniency and the additional cash loans made by the Bank. Essentially, they argue that the Bank favored the other guarantors and DM&L to their detriment by failing to foreclose sooner on the secured collateral.

Guarantors can consent in advance to changes that are subsequently made. See *Dunlap v. C & S DeKalb Bank*, 134 Ga. App. 893, 896 (4) (216 SE2d 651) (1975). Here, Greenwald and Denzik assented in advance to the Bank's extension and renewal of the two notes. Moreover, a contracting party cannot breach an implied covenant of good faith where it has done what the provisions of the contract expressly permit it to do. *Whisenant v. Fulton Fed. Sav. &c.*, 200 Ga. App. 31, 33 (1) (406 SE2d 793) (1991). Under the terms of the guaranty, the Bank was expressly permitted to compromise all or any part of the collateral. *Griswold v. Whetsell*, 157 Ga. App. 800, 803 (3) (278 SE2d 753) (1981) (surety cannot complain of impairment of collateral where she assented in advance to same); see *Sadler v. Trust Co. Bank*, 178 Ga. App. 871, 873 (2) (344 SE2d 694) (1986). According to the contract terms, the Bank had no obligation to liquidate the collateral before seeking recovery from the guarantors but was expressly authorized to pursue an election of remedies under the contract or under applicable law. See *Cosby v. A.M. Smyre Mfg. Co.*, 158

Ga. App. 587, 591 (5) (281 SE2d 332) (1981).

By law, when a debtor is in default under a surety agreement, a secured party, "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." OCGA § 11-9-501 (1). The Bank, as a secured creditor, had the option of either proceeding to suit or foreclosing on the collateral. *Sadler*, 178 Ga. App. at 873 (2). Where, as here, the liability of the guarantors depends on the failure of the original debtor to pay the debt when due, it is not necessary that such debtor be sued to judgment before the institution of a suit against the guarantors. *Ford Motor Credit Co. v. Sullivan*, 170 Ga. App. 718, 721 (3) (318 SE2d 188) (1984).

Notwithstanding the claim to the contrary, the obligation to exercise good faith under the Georgia Uniform Commercial Code does not support an independent cause of action. *Lake Tightsqueeze, Inc. v. Chrysler First Fin. Svcs. Corp.*, 210 Ga. App. 178, 180-181 (4) (435 SE2d 486) (1993). Nor does the equitable principle of exoneration apply to the underlying action, inasmuch as it relates to Greenwald and Denzik's right of recovery against DM&L, not the Bank. See OCGA § 10-7-41 (surety's rights to proceed against its principal).

Finally, Greenwald and Denzik's argument that the Bank negligently handled the loans at issue lacks merit. A mere failure by the Bank to sue as soon as the law allows or to neglect to prosecute with vigor its legal remedies, unless for consideration, would not operate to release the guarantors. OCGA § 10-7-22.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 26, 1997 —
RECONSIDERATION DENIED SEPTEMBER 16, 1997.

*Jones, Cork & Miller, Hubert C. Lovein, Jr.*, for appellants.
*Page, Scrantom, Sprouse, Tucker & Ford, W. G. Scrantom, Jr., Michael D. Smith*, for appellee.