A01A1610. STUART ENTERPRISES INTERNATIONAL, INC. et al. v. PEYKAN, INC. et al.

(555 SE2d 881)

ANDREWS, Presiding Judge.

Stuart Enterprises International, Inc. and Andrew H. Stuart (collectively "Stuart") sued Peykan, Inc. and Jamshid Ahmadipour (collectively "Ahmadipour") for breach of contract and other claims arising out of Stuart's purchase from Ahmadipour of an Athens' business known as "Munchie's Italian Restaurant." Ahmadipour counterclaimed, alleging that Stuart was in default on the promissory note delivered in connection with the purchase and asking for attorney fees for stubborn litigiousness. The trial court directed a verdict for Ahmadipour for $63,004.99 on his claim under the promissory note. The jury returned a verdict for Ahmadipour on Stuart's claim of breach of contract, but awarded Stuart $360 on his claim for breach of the implied covenant of good faith and fair dealing. The jury awarded $23,000 to Ahmadipour on his litigiousness counterclaim.

The trial court denied Stuart's motion for a judgment notwithstanding the verdict or a new trial, but entered a j.n.o.v. in favor of Ahmadipour.

On appeal, Stuart claims the trial court erred in (1) certain instructions to the jury regarding the sale of the "Munchie's" name, (2) granting Ahmadipour's motion for a j.n.o.v. on Stuart's claim for breach of the implied covenant of good faith, and (3) failing to grant his motion for a j.n.o.v. on Ahmadipour's stubborn litigiousness claim. We disagree, and for the reasons set forth below, we affirm.

1. At issue at trial was whether Ahmadipour breached the requirement of the asset purchase agreement that he sell to Stuart the assets of the business, including "the name Munchie's Italian Restaurant." Evidence shows that a third party had previously registered a trademark with the Secretary of State of Georgia on February 20, 1988, consisting of a Normandy blue and blush pink dragon and the word "Munchie's." Ahmadipour did not file a trademark with the Secretary of State, although he did register the trade name "Munchie's" with the Superior Court of Clarke County as required by OCGA § 10-1-490. Stuart argued that the prior registration of the trademark by a third party prevented Ahmadipour from selling the "Munchie's" name to Stuart in violation of the asset purchase agreement and that Stuart remained subject to suit for trademark violation if he tried to use the "Munchie's" name in the future.

At the charge conference, Stuart's counsel objected to the charge the trial court proposed to give to the jury regarding trademarks and trade names. Stuart asked the trial court to also charge the jury that a registered trademark is subject to civil action for infringement. The trial court refused to change its proposed charge to the jury to include the reference to trademark infringement, but did instruct the jury regarding the difference between trade names and trademarks because the trial court found some ambiguity with regard to the interests that the parties intended to be covered by the sale.

In this appeal, Stuart enumerates as error the trial court's failure to instruct the jury "that prior registration of the 'Munchie's' name by a third party prevented [Ahmadipour] from selling the 'Munchie's' name to Stuart." As so composed, this enumeration of error is clearly without merit. The prior registration of a trademark which included the word "Munchie's" would not prevent Ahmadipour from transferring the trade name "Munchie's Italian Restaurant," if this was the intent of the parties. A trade name and a trademark are not identical interests. A trademark functions as an identifier of goods or services, while a trade name "primarily identifies the owner or operator of a business and may also be used to identify the goods handled by such owner." *Gordy v. Dunwody*, 209 Ga. 627, 632 (2) (74 SE2d 886) (1953). A trademark logo is protected from infringement

upon registration with the secretary of state, while trade name protection may be acquired by long and exclusive use. See OCGA § 10-1-450; *Giant Mart Corp. v. Giant Discount Foods*, 247 Ga. 775 (279 SE2d 683) (1981); *Womble v. Parker*, 208 Ga. 378 (67 SE2d 133) (1951). The trial court could not, as Stuart urges, instruct the jury that the prior registration of a mark including the name "Munchie's" prevented the transfer of the restaurant's name to Stuart. Such a charge amounts to a direction to the jury to find for Stuart on his breach of contract claim and ignores the difference between a trade name and a trademark.

Even if we were to interpret Stuart's enumeration of error to encompass the argument made by trial counsel with regard to the trial court's charge, which was that such charge should include a reference to the available causes of action for a trademark violation, we find no error. The instruction that the trial court gave to the jury is accurate insofar as it describes the difference between a trade name and a trademark. There was no evidence presented that Stuart had been subject to, or threatened with, an action for infringement of a trademark by his use of the name "Munchie's Italian Restaurant." An addition to the charge describing the actions which may or may not be available to a third party for a hypothetical violation of her trademark invites the jury to speculate about matters that are not in issue. We find that the trial court did not err in its charge to the jury.

2. The trial court granted Ahmadipour's motion for a j.n.o.v. on the jury's finding that he breached the covenant of good faith and fair dealing. Stuart argues that this implied covenant was breached when Ahmadipour removed a case of liquor from inventory and $300 from the cash register shortly before the closing of the sale. The trial court reasoned that this verdict was inconsistent with the jury's finding for Ahmadipour on Stuart's breach of contract claim. We find that Stuart's claim of a breach of the covenant of good faith and fair dealing is not an independent cause of action which could be asserted separately from the claim for breach of contract, and so we affirm the trial court's grant of Ahmadipour's motion for a j.n.o.v.

The implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law. The Uniform Commercial Code establishes a duty of good faith in performance for contracts governed thereunder, and there is a general statutory requirement to perform substantially within the spirit and letter of a contract. OCGA §§ 11-1-203; 13-4-20; *Flynn v. Gold Kist*, 181 Ga. App. 637, 638-639 (1) (353 SE2d 537) (1987). There is also a common law duty to diligently and in good faith seek to comply with all portions of the terms of a contract. See *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980); *Smithloff v. Benson*, 173 Ga. App. 870, 872-873 (1) (328 SE2d 759) (1985). The Eleventh Circuit Court

of Appeals, in interpreting Georgia law, explains the concept succinctly: "[T]he 'covenant' [to perform in good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure." (Citation omitted.) *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F2d 1414, 1429 (IV) (11th Cir. 1990).

In contracts governed by the UCC, the failure to act in good faith in performing a contract does not create an independent cause of action. See *Greenwald v. Columbus Bank &c. Co.*, 228 Ga. App. 527, 530 (492 SE2d 248) (1997); *Lake Tightsqueeze v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178, 180-181 (4) (435 SE2d 486) (1993). Although we have not expressly ruled whether the common law requirement of good faith and fair dealing in the performance of a contract creates an independent cause of action apart from breach of contract, the Eleventh Circuit Court of Appeals has examined the question and ruled that Georgia law would not recognize such an independent cause of action. *Alan's of Atlanta*, supra. We agree. The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract. Furthermore, it would be logically inconsistent for us to hold that a claim of a breach of the duty of good faith imposed by the UCC would not create an independent cause of action while a breach of the corresponding common law duty would create such a cause of action.

Here, the jury found that there was no breach of contract, but returned a verdict based solely on a claim for the breach of the covenant of good faith in the performance of that contract. Inasmuch as such a breach cannot form the basis of an independent cause of action, this verdict cannot stand. See *Troy v. Interfinancial*, 171 Ga. App. 763, 767 (1) (320 SE2d 872) (1984) (j.n.o.v. in favor of the defendant was proper when jury returned a verdict for plaintiff for cause of action which could not be maintained).

3. Lastly, Stuart argues that, should the jury's verdict on his breach of covenant of good faith claim be reinstated, it would follow that the trial court erred in denying his motion for a j.n.o.v. on Ahmadipour's claim of stubborn litigiousness. As Stuart did not prevail on the claims of error considered above, and the jury's finding of stubborn litigiousness is supported by the record, we find that this enumeration of error also lacks merit.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

*Irvin, Stanford & Kessler, Gary R. Kessler*, for appellants.
*J. Hue Henry*, for appellees.